COUNTY OF DURHAM v. MADDRY AND COMPANY, INC., THOMAS E. MADDRY, INDIVIDUALLY AND AS AN OFFICER OF MADDRY AND COMPANY, INC., AND JAMES A. MADDRY, INDIVIDUALLY AND AS AN OFFICER OF MADDRY AND COMPANY, INC.

No. 135PA85

(Filed 10 December 1985)

Municipal Corporations § 30.14— zoning ordinance—automotive repair garage—operation in Highway Commercial district—remand of case for further determination

> The record did not support the conclusion of the Court of Appeals that defendants' performance of automotive repairs not in conjunction with a gasoline service station in a Highway Commercial zoning district was not in violation of the Durham County Zoning Ordinance where there was no evidence as to whether the repairs performed by defendants are of the type permitted by the Ordinance to be conducted in conjunction with gasoline service stations. The case is remanded for a determination of whether the repairs being performed by defendants on their premises are of the same type, and are no greater in scope than, those repairs permitted or customarily performed by gasoline service stations located in Highway Commercial districts in Durham County and, if so, whether the rationale of *In re Couch*, 258 N.C. 345, 128 S.E. 2d 409, applies to permit defendants to perform such repairs on their premises.

ON plaintiff's petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 72 N.C. App. 671, 325 S.E. 2d 298 (1985), reversing the order entered by

*McLelland, J.,* at the 29 February 1984 Civil Session of DURHAM Superior Court, permanently enjoining defendants' operation of an automotive repair service on their premises in a Durham County "Highway Commercial" zone. Heard in the Supreme Court 14 October 1985.

*Thomas Russell Odom, Assistant County Attorney, for plaintiff-appellant.*

*Winston, Blue & Rooks, by David M. Rooks, III, for defendant-appellees.*

MEYER, Justice.

Defendants are the owners of a tract of land in Durham County, the relevant portion of which is zoned "Highway Commercial." In the spring of 1981, defendants applied for a permit to build an automotive repair garage on this property. Defendants were advised by Durham County Supervisor of Inspections, L. F. Chamberlain, that an automotive repair garage was not a permitted use in the Highway Commercial district, but that such a use was permitted in areas zoned "Village Commercial." In May 1981, defendants applied to the Durham County Planning Commission for rezoning of 0.64 acres of their property from "Highway Commercial" to "Village Commercial." This request was denied by the Planning Commission on 8 June 1981, and defendants did not appeal the denial.

On 17 February 1982, defendants applied for a building permit to erect a "farm building" on their property. Recognizing that "farm buildings" were exempt from building permit requirements of the State Building Code, Mr. Chamberlain was reluctant to issue a permit for that purpose. Defendants, however, insisted on a permit to construct a "farm building." It is apparent on the record before us that Mr. Chamberlain questioned the good faith of this request and was suspicious of an attempt to obtain a permit for the construction of a "farm building" which would ultimately be used as an automotive repair garage and thus to circumvent the zoning ordinance. At the request of Mr. Chamberlain, defendants submitted a letter of intent stating that they intended to "use this building for farm purposes" and reserving the "right to engage in any other lawful venture . . . in accordance with Durham County Zoning Ordinance . . . Section XIII." De-

fendants were informed that a building permit was not required by either State law or the Durham County Zoning Ordinance to build any building for farm purposes. However, defendants insisted upon obtaining the permit so that the structure could be constructed according to commercial standards in the event they could later convert the building to commercial use. Defendants indicated that they also wanted to have all inspections made to ensure the building's suitability for conversion to commercial use. Mr. Chamberlain issued the building permit upon receipt of defendants' letter of intent, and the permit included a notation, "Not for use other than farm! or must comply with zone on property."

Several inspections were made of the building at the request of defendants during construction, including the electrical inspection, the only inspection required for a farm building. However, no final inspection was made as required by the State Building Code for the issuance of the Certificates of Compliance and Occupancy for buildings the construction of which requires a permit.

In April 1983, defendants began using the building on their property as an automotive repair garage without obtaining a Change of Use Permit required by the State Building Code, Section 105.3(f). Upon receiving complaints from individuals in the community, officials in the Planning and Inspections Department investigated the premises on 11 August 1983. On that date, the building inspector observed five vehicles inside the building where defendant James Maddry and another man were working and sixteen vehicles parked outside the building. The inspector also observed signs on the building. Plaintiff's exhibits 7 and 8 reveal a large on-building sign "Maddry & Co. Inc.—Auto Repairs," with a telephone number, and a ground sign advertising NAPA parts. Deryl Bateman, Director of Planning and Inspections, and Mr. Chamberlain prepared a letter dated 11 August 1983 informing defendants that they were in violation of the Zoning Ordinance and advising defendants to cease and desist from the use of the premises as an automotive repair garage. Defendants responded by letter on 19 August 1983 admitting that they were operating an automotive repair service allegedly according to Mr. Bateman's personal interpretation of the Zoning Ordinance verbally communicated to them.

On 6 September 1983, Supervisor of Inspections Chamberlain wrote to defendant Thomas E. Maddry reviewing the circumstances surrounding the issuance of the building permit for the "farm building" and containing the following:

It is obvious from the circumstances, including your own admission in your letter of August 19, 1983 that the building is being used for the commercial purpose of automotive repairs. You have been informed previously on several occasions, the most recent of which being a letter dated August 11, 1983 from me, that this use does not conform to the Durham County Zoning Ordinance and the zone for this property. As of this time there is no evidence that any effort has been made to bring the use into conformity with the zoning ordinance, nor is there any evidence that you are complying with the letter of August 11, 1983 to cease and desist the operation of the garage. In addition, because the building is being used commercially and no final inspections as required by Section 105.6(b) were made and no Certificate of Occupancy issued, the building does not comply with the North Carolina Building Code as adopted by Durham County.

Finally, because you stated your intentions were to use the building for farm purposes, but have obviously made no effort to do so, it is our position that the permit was obtained through misrepresentation. Therefore, for the reasons stated herein, the Permit #20118 issued February 18, 1982 is revoked effective immediately under the authority provided in Section 308 of the Administrative Provisions for Durham County and the State Building Codes, a copy of which is attached hereto. You are hereby notified to surrender the permit to the Durham County Building Inspections Department immediately.

On 20 January 1984, Judge John B. Lewis issued a preliminary injunction against defendants on the grounds that the automotive repair garage was constructed in violation of N.C.G.S. § 153A, Article 18, Part 4 (Building Inspections), and the State Building Code, Section 105.3(f), in that defendants failed to obtain a Change of Use Permit before converting the structure from a farm building to an automotive repair garage and that defendants had not obtained Certificates of Occupancy or Compliance. Judge

Lewis further concluded that the evidence was insufficient to permit a determination of whether defendants were also in violation of the Durham County Zoning Ordinance.

The matter was tried before Judge McLelland on 29 February 1984. Judge McLelland concluded that defendants' automotive repair service was in violation of Section XIII of the Durham County Zoning Ordinance in that (1) automobiles awaiting repairs were parked on the premises for more than one day, and (2) the repair service was not "incidental" to the operation of a gasoline service station. In addition, defendants were found to be in violation of the State Building Code, Sections 105.3(f) (permit required whenever the use of an existing building is changed), 105.5(d) (no deviations from terms of permit without written approval from Inspection Department), and 105.6(h) (inspection required before existing building converted to another use). Defendants were permanently enjoined from operating the automotive repair service on the premises. Defendants appealed to the Court of Appeals which reversed the trial court on the authority of *In re Couch*, 258 N.C. 345, 128 S.E. 2d 409 (1962).

The sole issue before us is whether the Court of Appeals erred in concluding that defendants' use of the premises is not in violation of the Durham County Zoning Ordinance, Section XIII, subsection 2(b)(1). The defendants do not contest the trial court's finding them in violation of the State Building Code, nor do they contest that they are in violation of Section XIII, subsection 3(a) of the Durham County Zoning Ordinance. In pertinent part, Section XIII, at the times relevant to this matter, provided:

2. USES PERMITTED

. . . .

   b. Gasoline service stations where in [sic] the sales and services are those customarily required by motorists, whether local or transient; provided that (1) the repair, replacement or adjustment to vehicles shall be limited to minor accessory parts . . . .

. . . .

3. USES PROHIBITED

    a. The parking or storage of automobiles or similar vehicles which is not incidental to the operation of a principal use as permitted in subsections 1 and 8 herein. Automobiles or similar vehicles shall not be parked or stored for the purpose of removing parts or for the purpose of making major or extensive repairs.

Defendants do not contend that they are operating the automotive repair garage in conjunction with a "gasoline service station." However, on the authority of *In re Couch*, 258 N.C. 345, 128 S.E. 2d 409 (1962), defendants contend that, because "gasoline service stations" are permitted to repair, replace, or adjust minor accessory parts under subsection 2(b)(1) of Section XIII of the Durham County Zoning Ordinance, they must be permitted to perform the same types of "repair, replacement or adjustment" within the Highway Commercial district regardless of the fact that they do not also sell gasoline.

In *Couch*, petitioners sought to construct a car wash service station in a C-1 "Local Community Commercial Zone." Among the permitted uses in a C-1 zone was "3. Automobile service stations for the sale of gasoline, oil, and minor accessories only, where no repair work is done except minor repairs made by the attendant. . . ." The intention of the ordinance was to limit uses "to those uses properly incidental to the needs of the local residential neighborhood." The petitioners in *Couch* were denied a permit to build the car wash apparently because it was not associated with a service station which sold "gasoline, oil, and minor accessories," a use which was permitted in the C-1 zone. The Court noted that in 1951 when this ordinance was passed, "a service station devoted *exclusively* to washing automobiles was unknown. Practically every filling station performed this service . . . ." *Id.* at 346, 128 S.E. 2d at 410 (emphasis added). The Court found that, although not specifically mentioned in the ordinance, the washing of automobiles was a permitted use on the part of automobile service stations which also sold gasoline, oil, and minor accessories. Thus, the Court noted, "[a]pparently if the proprietor were to sell gasoline, oil and minor accessories, and to make minor repairs and wash cars, the petitioners would be entitled to the permit." Therefore, "[o]n the theory that the whole includes all the parts,

we think the petitioners have the right to erect a building for *any one or more of the permitted uses*." *Id.* at 346, 128 S.E. 2d at 411 (emphasis added).

Defendants here liken their plight to that of the petitioners in *Couch* in that, they contend, should their business become a "gasoline service station" by the installation of a gasoline pump outside the garage, the "repair, replacement or adjustment to vehicles . . . limited to minor accessory parts" would become a permitted use under Section XIII, subsection 2(b)(1). Defendants argue that the *Couch* decision controls the issue presented here.

Plaintiff, County of Durham, on the other hand, contends that the defendants' and the Court of Appeals' reliance on *Couch* is misplaced. First, the Court in *Couch* was faced with a city ordinance which did not have an ascertainable legislative history regarding the questioned use. Indeed, the Court noted that when the ordinance was passed in 1951, a service station devoted exclusively to washing automobiles was unknown. Therefore, it was the task of this Court in *Couch* to interpret the legislative intent "in the light of surrounding circumstances." It was clear to the Court that the drafters of the ordinance in *Couch* had not contemplated a service station devoted exclusively to washing automobiles.

Plaintiff argues that here, in sharp contrast, the legislative intent of the permitted uses under Section XIII is clear. In 1956, both the Highway Commercial district and the Village Commercial district permitted "gasoline service stations *and repair garages*." (Emphasis added.) In 1960, both provisions were amended to add, "including body and fender repairs." On 15 February 1965, the Board of Durham County Commissioners enacted, *inter alia*, the provisions now referred to as Highway Commercial district, Section XIII, subsections 2(b) and 3(a). The provision permitting "repair garages" was deleted from permissible uses in Highway Commercial districts. Automotive repair garages continue to be permissible uses in Village Commercial districts. Therefore, plaintiff argues, there exists a clear statement of the legislative intent to exclude automotive repair garages from the Highway Commercial district, and the Court is not compelled, as it was in *Couch*, to infer legislative intent regarding permitted and prohibited uses.

Even assuming, *arguendo*, that *Couch* would control the situation here, an issue we do not now decide, we are unable to conclude from the record before us whether the repairs conducted by the defendants are of the type permitted to be conducted in conjunction with gasoline service stations pursuant to Section XIII, subsection 2(b)(1) ("repair, replacement or adjustment to vehicles . . . limited to minor accessory parts"). First, the term "minor accessory parts" is nowhere defined in the ordinance. Second, there is no evidence of the types of repairs defendants were conducting on the premises. Defendants contend that they have at all times conducted their business in conformity with the verbal interpretation of "minor repairs" given to them by Deryl Bateman, Director of Planning and Inspection. Bateman allegedly told defendants that the types of minor repairs which might be performed by a gasoline service station in a Highway Commercial district were those which could be completed in one day. Defendants contend that, since beginning their operations, they have limited their business to repairs which could be completed within eight hours according to a flat-rate workbook; defendants do not contend that they have completed all repairs within one day and acknowledge that vehicles are sometimes parked outside the building overnight when the two employees cannot "get to them" on the day the vehicles were brought in.

Even under the rationale of *Couch*, in order for defendants' automotive repair garage to be a permissible use in a Highway Commercial district, the types of repairs performed by defendants must be no greater in scope than the types permitted to be performed or actually performed by "gasoline service stations" subject to the same zoning provisions. The record before us and before the Court of Appeals in this matter is devoid of any evidence of the types of repairs performed on defendants' premises. Likewise, there is no evidence of the types of permissible "minor accessory parts" repairs permitted to be performed or customarily performed by "gasoline service stations" located within the Highway Commercial district. Thus, even assuming, *arguendo*, that *Couch* controls, there is no basis in the record upon which the Court of Appeals could have concluded that defendants' operations were permissible under *Couch* as being the same as, or lesser in scope than, those allowed to be performed by "gasoline service stations."

We hold, therefore, that the record does not support the portion of the Court of Appeals' decision reversing the trial court's order of a permanent injunction based on defendants' alleged violation of the Durham County Zoning Ordinance, Section XIII, subsection 2(b)(1) by performing automotive repairs not in conjunction with a gasoline service station. That portion of the Court of Appeals' decision is vacated and the case is remanded to the Court of Appeals for further remand to the Superior Court, Durham County, for a determination, first, of whether the automotive repairs being performed by defendants on the premises are of the same type, and are no greater in scope than, those repairs permitted to be performed, or are customarily performed, by gasoline service stations located in Highway Commercial districts in Durham County. If the trial court determines that defendants' repairs are of the permissible type for gasoline service stations under the Durham County Zoning Ordinance, Section XIII, subsection 2(b)(1), the court must then determine whether the rationale of the *Couch* opinion is applicable to these facts.

We affirm that portion of the Court of Appeals' decision directing that defendants may be enjoined from the operation of a minor automotive repair garage for as long as defendants remain in violation of the State Building Code or the Durham County Zoning Ordinance, Section XIII, subsection 3(a).

Vacated in part, affirmed in part, and remanded.